IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. POWERS, JASMINE WOODS, KEITH ROSE, and MICHAEL LHOTAK, | ) ) | |
| | ) | Case No.        4:16-cv-1299 |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CITY OF FERGUSON | ) | |
| | ) | |
| **Serve:        Hon. James Knowles III, Mayor** | ) | |
| **110 Church St.** | ) | |
| **Ferguson, MO 63135** | ) | |
| | ) | |
| STEPHANIE KARR | ) | |
| | ) | |
| **Serve:        Stephanie Karr** | ) | |
| **130 S. Bemiston Ave., Suite 200** | ) | |
| **St. Louis, MO 63105** | ) | |
| | ) | |
| J. PATRICK CHASSAING | ) | |
| | ) | |
| **Serve:        J. Patrick Chassaing** | ) | |
| **130 S. Bemiston Ave., Suite 200** | ) | |
| **St. Louis, MO 63105** | ) | |
| | ) | |
| TIM HARRIS | ) | |
| | ) | |
| **Serve:        Tim Harris** | ) | |
| **5220 Ponawanda Trail** | ) | |
| **Florissant, MO 63033** | ) | |
| | ) | |
| SEAN GIBBONS, | ) | |
| | ) | |
| **Serve:        Sean Gibbons** | ) | |
| **16 Barto Drive** | ) | |
| **St. Louis, MO 63135** | ) | |
| | ) | |
| JOHN DOE DEFENDANTS 1-3 | ) | |
| | ) | |
| Defendants. | ) | |

1

## COMPLAINT

**COME NOW** Plaintiffs Michael J. Powers, Jasmine Woods, Keith Rose, and Michael Lhotak, and for their cause of action against Defendants, jointly and severally, state as follows:

## PARTIES

1.  Plaintiffs Michael J. Powers, Jasmine Woods and Michael Lhotak are citizens and residents of the State of Missouri.  Plaintiff Keith Rose is a citizen and resident of the State of Illinois.

2.  Defendant City of Ferguson ("Ferguson") is a municipal corporation, organized and existing pursuant to Missouri law.  Ferguson had the ability to control and direct the conduct of the police officers of the Ferguson Police Department as they performed their duties in furtherance of Ferguson's goals.  Ferguson had direct supervision and control of its employee officers.  Ferguson is charged with enacting ordinances which do not violate the Constitution of the United States and the Missouri Constitution, and is prohibited from adopting customs and practices that violate the Constitution of the United States and the Missouri Constitution.

3.  Defendant Stephanie Karr is a citizen and resident of the State of Missouri. Defendant Karr is an attorney employed by the law firm of Curtis, Heinz, Garrett and O'Keefe, P.C.  On information and belief, the Curtis, Heinz, Garrett and O'Keefe, P.C. firm ("Curtis Heinz") and Defendants Karr and Chassaing were retained by Ferguson to provide services for the enforcement of Ferguson's unconstitutional ordinances and customs, practices and policies, and all prosecutorial functions of the City of Ferguson. Curtis Heinz is a private firm which is systematically organized to perform a major and lengthy administrative task for the City of Ferguson, namely providing the services of the City Attorney's Office and all prosecutorial functions of the City of Ferguson.  Curtis Heinz undertakes these tasks for profit and in

2

competition with other law firms in the St. Louis metropolitan area.  Pursuant to this relationship, Defendant Karr served as a prosecutor and as the City Attorney for the City of Ferguson. Defendant Karr's work as City Attorney was performed pursuant to a contract for services between Defendant City of Ferguson and the Curtis Heinz firm.[1]

4.      Defendant J. Patrick Chassaing is a citizen and resident of the State of Missouri. Defendant Chaissang is an attorney employed by Curtis Heinz.  Pursuant to his employment with Curtis Heinz, Defendant Chassaing served as a prosecutor for the City of Ferguson to enforce its unconstitutional ordinances and customs, practices and policies.

5.      Defendants Karr and Chassaing had personal, financial incentives to file criminal charges against and prosecute the Plaintiffs in this case because Karr and Chassaing charged and were paid $150.00 per hour for their work as prosecutors, in the enforcement of Ferguson's unconstitutional ordinances, customs, practices and policies.

6.      Defendant Tim Harris was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department.

7.      Defendant Sean Gibbons was a law enforcement officer employed by Defendant City of Ferguson as a member of the Ferguson Police Department.

8.      John Doe Defendants Nos. 1, 2 and 3 are law enforcement officers employed by Ferguson as members of the Ferguson Police Department and were acting under color of law. On information and belief, John Doe Defendants Nos. 1, 2 and 3 are the officers who, with the assistance of Defendant Harris, Defendant Gibbons and other officers of the Ferguson Police Department, falsely arrested and detained Plaintiffs.

---

[1] Deere, Stephen, "Ferguson City Attorney, Target Of Protesters In Recent Months, Resigns Position." St. Louis Post-Dispatch, May 24, 2016.

9.      Each of the acts alleged herein against Defendants were committed by them individually, or by their agents, servants and/or employees, all while acting under color of state law at all relevant times.  Each of the Defendants acted as agents of the other Defendants.

## JURISDICTION

10.     Plaintiffs bring this action for damages arising from the violation of their civil rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, which provide for this Court's jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343.   Pursuant to Title 28 U.S.C. §§2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.  Plaintiffs hereby request supplemental jurisdiction of their state law claims pursuant to 28 U.S.C. §1367.

## FACTUAL ALLEGATIONS

### THE WRONGFUL ARREST OF PLAINTIFFS

11.     On August 9, 2014 Michael Brown, an unarmed 18-year-old African-American man, was fatally shot by an officer of the Ferguson Police Department.  In the wake of the shooting, numerous protests occurred.

12.     Two days after the shooting, on August 11, 2014, after a candlelight vigil to remember Michael Brown, Plaintiffs Jasmine Woods, Keith Rose, and Michael Lhotak were engaged in lawful and peaceful assembly when they were arrested and jailed for 24 hours by officers of the Ferguson Police Department.  Defendant Harris prepared a police report alleging that these Plaintiffs "failed to comply" with police orders to disperse in purported violation of a City of Ferguson ordinance.  Defendant Harris as complaining witness (and under penalty of perjury), later prepared and signed a Complaint/Information as to each Plaintiff making the same allegations of "failure to comply."   The false Complaint/Information was also signed by

Defendant Karr as prosecutor.  Plaintiffs Woods, Rose and Lhotak never "failed to comply" with any lawful orders of the Ferguson Police.

13.     Defendant Harris did not actually arrest these Plaintiffs and had no personal knowledge regarding the charges he brought against them in the Complaint/Information.  Nor did Defendant Karr possess personal knowledge or competent evidence that Plaintiffs had violated the "failure to comply" ordinance.

14.     At approximately 1:30 a.m. on August 14, 2014, Plaintiff Michael Powers was waiting for Alderman Antonio French to be released by the Ferguson Police Department, when he was arrested by officers of the Ferguson Police Department, charged with "failure to comply" with police orders, as well as with a noise violation, and jailed in retaliation for his presence. Plaintiff Powers never "failed to comply" with any lawful orders of the Ferguson Police.

15.     Defendant Gibbons prepared a police report and prepared and signed a Complaint/Information, under penalty of perjury, which both falsely alleged that Plaintiff Powers had failed to comply with lawful police orders in violation of Ferguson ordinance.  The false Complaint/Information was also signed by Defendant Karr as prosecutor.

16.     At all relevant times, the Ferguson Municipal Code, 14 Ferguson Mun. Code § 29-16, (the "failure to comply ordinance") provided in relevant part:

> It shall be unlawful for any person to: (1) Fail to comply with the lawful order or request of a police officer in the discharge of the officer's official duties where such failure interfered with, obstructed or hindered the officer in the performance of such duties[.]

17.     Ferguson's failure to comply ordinance is unconstitutional, both facially and as applied to Plaintiffs.  Among other things, the ordinance is void for vagueness and illegally burdens the Plaintiffs and other citizens' rights to free speech and lawful assembly under the First Amendment and the right to be free from unwarranted arrest, detention and criminal

5

prosecution without probable cause under the Fourth Amendment.  Plaintiffs' arrest, detention and prosecution under the failure to comply ordinance was therefore illegal and in violation of the Plaintiffs' Federal and Missouri constitutional rights.

18.     Plaintiffs were each arrested, charged and prosecuted with violation of this ordinance in retaliation for and as a result of their lawful actions on August 11, 2014 and August 14, 2014.  Defendants as a matter of law lacked probable cause to arrest and prosecute Plaintiffs under the "failure to comply" ordinance, because Defendants had no evidence whatsoever showing that Plaintiffs failed to comply with lawful police orders, that Plaintiffs had even heard any such orders, or that Plaintiffs had in any way interfered with or hindered officers in the performance of their duties.

**DEPARTMENT OF JUSTICE INVESTIGATION REGARDING THE UNLAWFUL
AND UNCONSTITUTIONAL POLICIES AND CUSTOMS
OF THE FERGUSON POLICE DEPARTMENT**

19.     Plaintiffs' arrests, detentions and prosecutions were part of a wider pattern of policies, customs and practices of abuse of authority by Ferguson and the Ferguson Police Department that go back many years.  These policies, customs and practices were uncovered following a wide-ranging investigation by the Civil Rights Division of the United States Department of Justice of the City of Ferguson, the Ferguson Municipal Courts and the Ferguson Police Department was initiated in the wake of the death of Michael Brown.  That investigation resulted in a 105 page report showing, among many of things, patterns of illegal stops, searches and arrests, driven partly by racial bias.  Ferguson's unlawful and unconstitutional policies, customs and practices have also been widely reported in the press.

20.     The DOJ's findings from its expansive, in-depth federal investigation were set out in its report titled "Investigation of the Ferguson Police Department," dated March 4, 2015. This

Report determined that **the Ferguson Police Department and its officers engaged in a custom and practice of violating the constitutional rights of citizens, including in the Department's abusive and unconstitutional use of the "failure to comply" ordinance**.  Among other things, the Department of Justice found that:

a)      "One area of FPD activity deserves special attention for its frequency of Fourth Amendment violations: enforcement of Ferguson's Failure to Comply municipal ordinance. 14 Ferguson Mun. Code § 29-16. Officers rely heavily on this charge to arrest individuals who do not do what they ask, even when refusal is not a crime."

b)       "Officers expect and demand compliance even when they lack legal authority. They are inclined to interpret the exercise of free-speech rights as unlawful disobedience, innocent movements as physical threats ... **Police supervisors and leadership do too little to ensure that officers act in accordance with law and policy**, and rarely respond meaningfully to civilian complaints of officer misconduct. The result is **a pattern of stops without reasonable suspicion and arrests without probable cause in violation of the Fourth Amendment; infringement on free expression, as well as retaliation for protected expression**, in violation of the First Amendment; and excessive force in violation of the Fourth Amendment."

c)      **"FPD's approach to enforcement results in violations of individuals First Amendment rights.  FPD arrests people for a variety of protected conduct: people are punished for talking back to officers, recording police activities, and lawfully protesting perceived injustices."**

d)      "Frequently, officers stop people without reasonable suspicion or arrest them without probable cause. Officers rely heavily on the municipal 'Failure to Comply'

charge, which appears to be facially unconstitutional in part, and is frequently abused in practice."

e)       The "failure to comply" charge is applied in a racially discriminatory manner. Among other things, "From 2011 to 2013, African Americans accounted for 94% of all 'Failure to Comply' charges."

f)       "Officers frequently make enforcement decisions based on what subjects say, or how they say it. Just as officers reflexively resort to arrest immediately upon noncompliance with their orders, whether lawful or not, they are quick to overreact to challenges and verbal slights. These incidents—sometimes called "contempt of cop" cases—are propelled by officers' belief that arrest is an appropriate response to disrespect. These arrests are typically charged as a Failure to Comply, Disorderly Conduct, Interference with Officer, or Resisting Arrest."

21.     In a section of the Department of Justice Report addressing "changes necessary to remedy Ferguson's unlawful law enforcement practices", the Report further provides that Ferguson should "Revise Failure to Comply municipal code provision to bring within constitutional limits, and provide sufficient guidance so that all stops, citations, and arrests based on the provision comply with the Constitution" and that Ferguson needed to "Train officers on proper use of Failure to Comply charge[.]"

22.     The Department of Justice Report also "singled out Karr for criticism several times.  Among the accusations were that she engaged in 'retaliatory conduct' against lawyers who challenged the city."[2]

---

[2] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.

## DEFENDANT CITY OF FERGUSON'S SETTLEMENT
## WITH THE DEPARTMENT OF JUSTICE
## AND THE FEDERAL COURT CONSENT DECREE

23.     Rather than contest these findings of the Department of Justice's legally authorized investigation, the City of Ferguson negotiated a settlement.  On or about March 17, 2016, Ferguson entered into a Consent Decree with the Department of Justice in the United States District Court for the Eastern District of Missouri before the Honorable Catherine Perry. Judge Perry found that the Consent Decree represented a fair, adequate and reasonable plan to resolve the Ferguson Police Department and municipal court's routine violations of the constitutional rights of citizens.

24.     Pursuant to the Consent Decree, Ferguson agreed to adopt numerous changes in its policies to address it ongoing violations of citizens' civil rights, including:

a)  Ferguson "will ensure" that its officers will not infringe on the First Amendment rights of citizens, including "The right to criticize or complain about police conduct without being subject to retaliation;" and "The right to engage in lawful public protest."

b)  "FPD will ensure that officers do not treat protestors differently based on the content of their speech or expression."

c)  "FPD will ensure that officers do not take any police action in retaliation for individuals lawfully exercising their right to witness, observe, record, comment on, or protest police activity. This includes detaining, searching, arresting, issuing a citation, or using force in response to non-criminal statements or other expressive conduct, when the officer would not have taken such action in the absence of the statements or expressive conduct."

d)  "The City agrees to provide to all FPD officers initial and ongoing annual in service training regarding First Amendment protected activity, appropriate police responses to the exercise of such activity, and common pitfalls and oversteps in responding to such activity."

25.     The Ferguson City Council formally adopted the terms of the Consent Decree on March 15, 2016.

**DEFENDANTS' WRONGFUL CONTINUATION OF PROSECUTIONS OF PLAINTIFFS AND OTHERS FOR "FAILURE TO COMPLY" DESPITE THE JUSTICE DEPARTMENT FINDINGS AND COMPLETE LACK OF EVIDENCE**

26.     While the Consent Decree required Ferguson to address many of its unconstitutional practices, including the use of arrest in retaliation for exercise of protected speech, it did not require Ferguson to dismiss existing charges against those, like Plaintiffs, who had been arrested on unconstitutional, frivolous and retaliatory "failure to comply" charges.

27.     Despite the Department of Justice's investigation detailing Ferguson's unlawful use of the "failure to comply" charge to retaliate against protected speech, Defendants Karr and Chassaing knowingly pursued these baseless charges against Plaintiffs and others.

28.     A high profile trial occurred on February 8-9, 2016, when Defendant Chassaing argued to a St. Louis County jury that the Rev. Osagyefo Sekou, who was taken into custody in September 2014 while on his knees praying outside the Police Department, disobeyed officers as they disbanded a protest.  A jury acquitted Rev. Sekou in less than 20 minutes.[3]

29.     On January 13, 2016, defense attorneys met with Defendant Chassaing in a conference room at Ferguson City Hall to depose police officers in six "failure-to-comply" cases.

---

[3] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.

In all but one case, the officers could not identify the arresting officer.  The depositions cost the city $1,470 in legal fees.[4]

30.      St. Louis County Associate Circuit Judge Joseph S. Dueker questioned the merits of one Ferguson failure-to-comply case when Defendant Chassaing "could not produce an officer who arrested the Defendant, nor a witness who saw the defendant disregard an officer's order, nor a witness who could testify that the defendant heard a police order to disperse." Judge Dueker stated that "There's no testimony regarding this defendant at all, not that she was even there."[5]

31.      Elizabeth Peinado, who was with Plaintiff Michael Powers at the time of his arrest and was also arrested, was similarly charged with "failure to comply."  Defendant Karr dismissed the charges against Peinado about 40 minutes prior to trial.  "In a lengthy memo, Karr argued that the defendant had 'clearly' committed the violation.  However, she was declining to prosecute for 'reasons wholly unrelated to the merits of the case.'  Karr did not elaborate."[6]

32.      In relation to another Ferguson failure-to-comply case, Judge Dueker stated that the prosecutor's cases seemed to hinge on the belief that because the defendants had been arrested, they must be guilty.   In response, "Chaissang acknowledged the cases were circumstantial, but said the judge should convict the defendants.  The judge, he said, could infer that because officers took the defendants into custody, they had been among 11 protesters

---

[4] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.
[5] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.
[6] Deere, Stephen, "Ferguson Prosecutor Dismisses Case Minutes Before Trial, Maintains That The Defendant Still Violated The Law." St. Louis Post-Dispatch, May 18, 2016.

disregarding police orders to stay out of the street."[7]   Chaissang's argument violates the fundamental tenet of the American justice system of the presumption of innocence.  Chassaing's argument also demonstrates the baseless nature of the criminal prosecutions undertaken by Defendants.

33.    Defendant Chassaing has been similarly blunt in admitting the improper motive of Defendants in pursuing these prosecutions, namely to suppress freedom of speech.  In relation to the charges brought against Plaintiffs Rose, Lhotak and Woods, that "These cases were pursued in order to deter others participating in future protests from assuming there are no limits or parameters to their activities[.]"[8]

34.    Plaintiff Rose's defense attorney, Joshua Canavan, was quoted by the St. Louis Post-Dispatch as stating "Given the lack of evidence, these cases have become personal for the prosecutors." Defendant Chassaing has demonstrated that his decision to prosecute the failure to comply cases was indeed personally motivated, by suggesting that charges against protesters should be pursued because some had purportedly "threatened to rape and kill officers, their spouses, children and pets[.]"[9]

35.    On information and belief, Karr and Chassaing also pursued these baseless charges, despite the complete lack of evidence, to further their own financial and personal interests.  The St. Louis Post-Dispatch has reported that:

> Today, nearly two years later, Ferguson prosecutors are pursuing a conviction against Mentzel, one of dozens of defendants charged with "failure to comply" – a charge that the U.S. Department of Justice has said Ferguson police have routinely abused.

---

[7] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.
[8] Deere, Stephen, "Ferguson Loses Three More Cases Against Protesters." St. Louis Post-Dispatch, May 12, 2016.
[9] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.

Some critics say they believe financial and personal interests are driving the effort at a time when Ferguson should be working to enact the terms of a Justice Department agreement to reform the city's police and court practices.

Many of the cases involve protesters accused of disregarding orders to leave an area as police broke up crowds during demonstrations[.]
….
After approving a far-reaching consent decree with the Justice Department, city leaders promised to move the community forward. Yet the private lawyers employed by the city to prosecute ordinance violations have refused to back down, even in cases the Justice Department cited as infringements on constitutional rights.

All told, the prosecutions have cost taxpayers tens of thousands of dollars. Convictions in those cases may yield a fine of $150 – the hourly fee for Ferguson prosecutors.

From 2014 to 2015, the amount prosecutors billed Ferguson rose from $30,260 to $61,705. For work during the first three months of 2016, prosecutors' charged Ferguson just over $30,000. If that pace continues, prosecutors could cost the city more than $120,000 this year. [10]

36.     Chassaing and Karr have no limit on the number of hours for which they can bill. "From 2014-2015, prosecutors' expenses doubled, and they are on pace to double again this year – mostly because they are prosecuting protesters charged with failure to comply."[11]

37.     On May 4, 2016, it was reported that Ferguson "is removing City Attorney Stephanie Karr from her position as prosecutor, more than a year after the Justice Department accused Ferguson's municipal court of numerous constitutional violations and singled out Karr for her role in them."[12]

38.     In relation to Karr's removal, "City officials said they recognized that having the same person as both city attorney and prosecutor could appear as a conflict of interest. … St.

_____

[10] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.
[11] Deere, Stephen, "Ferguson Takes Steps To Remove Controversial Prosecutor." St. Louis Post-Dispatch, May 4, 2016.
[12] Deere, Stephen, "Ferguson Takes Steps To Remove Controversial Prosecutor." St. Louis Post-Dispatch, May 4, 2016.

Louis University law professor Brendan Roediger noted that the positions have differing interests.  The city attorney protects a municipality's financial interest, while a prosecutor pursues justice on behalf of its residents."[13]  This conflict of interest is readily apparent, given that Karr and her law firm were charging the City of Ferguson tens of thousands of dollars to pursue criminal prosecutions that lacked any basis in law or fact.

39.    Karr has admitted that if there is no evidence to support a prosecution the case would be dismissed.[14]  Karr and Chassaing did not dismiss the cases, even though they both knew that there was no evidence to support the charges of "failure to comply" against these Plaintiffs. Due to their own personal and financial motives, Defendants Karr and Chassaing continued to prosecute Plaintiffs, ignoring the presumption of innocence and relying on an ipso facto proposition that if a citizen is arrested the citizen must be guilty.

40.    In an advertisement placed by Ferguson for applicants for the position of prosecutor, "the city says applicants should pay close attention to a provision in the Justice Department agreement that says: 'the City will develop and implement policies to ensure that the Ferguson Municipal Court operates impartially, independently from the City Prosecutor, and in a manner that eliminates existing and potential unlawful conflicts of interest.'"[15]

41.    While the search for a prosecutor was underway, Karr and other lawyers from her firm nevertheless continued to prosecute the failure-to-comply cases.[16]

---

[13] Deere, Stephen, "Ferguson Takes Steps To Remove Controversial Prosecutor." St. Louis Post-Dispatch, May 4, 2016.
[14] Deere, Stephen, "Legal Bills Mount As Ferguson Stands By 'Failure-To-Comply' Cases." St. Louis Post-Dispatch, May 2, 2016.
[15] Deere, Stephen, "Ferguson Takes Steps To Remove Controversial Prosecutor." St. Louis Post-Dispatch, May 4, 2016.
[16] Deere, Stephen, "Judge Hands Down Two More Not-Guilty Verdicts In Cases Stemming From Ferguson Protests." St. Louis Post-Dispatch, May 17, 2016.

42.     On or about May 23, 2016, Karr resigned from her remaining position as City Attorney with the City of Ferguson, pending a new City Attorney being hired.

43.     As of the date of this filing, no new City Attorney has been hired by the City of Ferguson, and Karr remains acting as the City Attorney.

### PLAINTIFFS WERE ACQUITTED
### OF ALL CHARGES BROUGHT AGAINST THEM

44.     As in the other "failure to comply" cases pursued by Defendants, at no time during the investigatory process or in the subsequent criminal prosecution of Plaintiffs did the Defendants ever have any evidence that Plaintiffs engaged in criminal conduct.  Nevertheless, Defendants arrested Plaintiffs, held them in jail for 24 hours, and pursued criminal charges against Plaintiffs up to and including trial, without any probable cause to do so, based solely on the fact that Plaintiffs had been arrested.

45.     Ferguson and the other Defendants did not produce any officers or other witnesses, prior to trial or at trial, who could say they witnessed or had knowledge of Plaintiffs' purported failure to comply with any order of a police officer on August 11, 2014 or August 14, 2014.  Defendants relied solely on the fact of Plaintiffs' arrests to show their conduct had violated the "failure to comply" ordinance.

46.     The Plaintiffs did not refuse to comply with any lawful orders of the Ferguson Police Department.  None of the Plaintiffs violated the failure to comply ordinance, as found by the Circuit Court of St. Louis County when each of the Plaintiffs was acquitted of the charges brought against them.  To the contrary, Plaintiffs' arrests were in retaliation for Plaintiffs' exercise of their First Amendment rights to free speech and assembly.

47.     Plaintiff Michael Powers was tried in the Circuit Court of St. Louis County on April 11, 2016, and the Court entered a verdict and judgment of acquittal on May 17, 2016.

Plaintiff Keith Rose was tried on April 12 and 13, 2016 and the Court entered a verdict and judgment of acquittal on May 10, 2016.  Plaintiff Michael Lhotak was tried on April 14, 2016, and his Motion for Judgment of Acquittal was granted by the Court on May 10, 2016.  Plaintiff Jasmine Woods was tried on April 27, 2016, and her Motion for Judgment of Acquittal was granted by the Court on May 10, 2016.

**COUNT I**

**PLAINTIFFS' CAUSE OF ACTION AGAINST
DEFENDANTS HARRIS, GIBBONS AND THE JOHN DOE DEFENDANTS
FOR UNLAWFUL SEIZURE/FALSE ARREST PURSUANT TO 42 U.S.C. § 1983.**

48.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

49.     As set forth above, the John Doe Defendants arrested Plaintiffs Woods, Rose and Lhotak for exercising their constitutional rights of speech and assembly; while Defendant Harris took custody of these Plaintiffs and put them in jail.  Defendant Harris also prepared a false police report stating that Plaintiffs had violated the Ferguson failure to comply ordinance in an effort to create an illusion of probable cause to support the arrest.  Defendant Gibbons similarly prepared a false police report and signed a false Complaint/Information, under penalty of perjury, alleging that Plaintiff Powers had violated the failure to comply ordinance.

50.     Defendants Harris, Gibbons, and the John Doe Defendants did not have probable cause to detain or arrest the Plaintiffs.  Defendants' seizure of Plaintiffs was unreasonable, and deprived Plaintiffs of their right to be free from unreasonable seizure of their person in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, and their right not to be retaliated against for exercising their First Amendment rights.

51.     On information and belief, Defendants conspired to and acted together under color of state law, violated Plaintiffs' civil rights and deprived them of the rights, privileges, and immunities secured by the Constitution and laws of the United States.

52.     As a direct result of the conduct of Defendants described above, Plaintiffs suffered damages including the loss of their liberty, as well as fear, anxiety and emotional distress.

53.     The acts of Defendants as described herein were intentional, wanton, malicious, evil and oppressive, and exhibited a reckless indifference to the federally protected rights of Plaintiffs, thus entitling plaintiffs to an award of punitive damages against Defendants in order to punish and to deter them and others similarly situated from like conduct in the future.

54.     Plaintiffs also request an award of reasonable attorneys fees and legal costs pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future, for attorneys' fees and costs, and for such other and further relief as the Court deems just and proper, the premises considered.

## COUNT II

**PLAINTIFFS' CAUSE OF ACTION AGAINST
ALL DEFENDANTS FOR MALICIOUS PROSECUTION
PURSUANT TO 42 U.S.C. § 1983.**

55.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

56.     As set forth above, Defendants Harris and Gibbons instigated criminal charges against Plaintiffs and served as the complaining witnesses.  The "evidence" on which Plaintiffs

were charged was derived from and provided by Harris and Gibbons.  Harris has admitted that he did not know of any factual basis for charging the Plaintiffs with failure to comply.  In fact, there was no evidence which supported charging Plaintiffs with any crime.

57.     Defendants Karr and Chassaing also instigated and continued the criminal proceedings against Plaintiffs through their investigation of the underlying facts and in their for profit private work as "prosecutors" on behalf of the City of Ferguson.

58.     Defendants lacked any probable cause whatsoever to instigate criminal proceedings against Plaintiffs, but nevertheless knowingly and recklessly instigated proceedings against Plaintiffs.  Defendants lacked probable cause in law or fact to instigate and pursue the criminal proceedings against Plaintiffs, in that Defendants had no facts which would warrant a prudent person to honestly believe that the actions and the means taken in the investigation and prosecution of Plaintiffs were just, legal, and proper.

59.     To the extent that Defendants claim they believed that the arrest and instigation of criminal charges against and prosecution of Plaintiffs was supported by probable cause, Defendants' belief was objectively unreasonable, because there was no evidence from any witness that the Plaintiffs had failed to comply with a lawful order of a policeman or had interfered with, obstructed or hindered Ferguson officers.

60.     By instigating and continuing the criminal prosecution of Plaintiffs without any indicia of probable cause, Defendants acted with malice and in bad faith.

61.     The criminal prosecutions of Plaintiffs without probable cause violated Plaintiffs' constitutional rights under the Fourth, Fifth and Fourteenth Amendments, including Plaintiffs' right not to have false and baseless criminal charges brought against them in bad faith.

62.     The wrongful criminal prosecution of Plaintiffs constituted an unreasonable "seizure" of Plaintiffs in violation of the Fourth Amendment of the United States Constitution, and Defendants' prosecution of Plaintiffs in the absence of probable cause violated Plaintiffs' rights against such prosecutions under the Fourth and Fifth Amendments of the United States Constitution.  Furthermore, the baseless criminal prosecutions of Plaintiffs in retaliation for their exercise of their First Amendment rights to freedom of speech and assembly offends fundamental principles of justice and shocks the conscience, and as such violates Plaintiffs' due process rights under the Fourteenth Amendment.

63.     Defendants Karr and Chassaing's work on behalf of the City of Ferguson was undertaken through their employment with the Curtis, Heinz, Garrett and O'Keefe, P.C. firm. That firm provides prosecuting attorney services to the City of Ferguson under a contract and does the same thing for other similar municipalities in the St. Louis metropolitan area.

64.     Curtis Heinz is systematically organized to provide these tasks to the City of Ferguson and other similar municipalities in the area, through its "Curtis Heinz Local Government Practice Group."   Among other things, Curtis Heinz's website states that "The Curtis Heinz Local Government Practice Group has an unparalleled ability to serve the cities and local governments of the St. Louis metropolitan area. Attorneys at the firm serve as city attorney or village attorney for more than 20 municipalities in the area … several of our attorneys serve as prosecutors in municipal court for the cities we represent."

65.     Because the Curtis Heinz firm is a private entity, in competition with other law firms in providing attorney services to local governments, marketplace pressures provide the Curtis Heinz firm with strong incentives to avoid overly timid, insufficiently vigorous, or unduly fearful employee job performance.   This is reflected in the unconstitutional behavior of

Defendants Karr and Chassaing in pursuing prosecutions for which no probable cause existed, including the absence of any evidence from a complaining witness with direct knowledge of the circumstances of Plaintiffs' arrest, or any other evidence, whatsoever, that Plaintiffs had violated the law.  Indeed, Defendant Chassaing stated that the St. Louis Circuit Court should "infer" probable cause for the arrests and the guilt of Plaintiffs based solely on the fact that the Plaintiffs had been arrested.  In light of these facts, Defendants Karr and Chassaing are not entitled to either absolute or qualified immunity.  *See* Richardson v. McKnight, 521 U.S. 399, 410, 117 S. Ct. 2100, 2106-07 (1997).

66.    Furthermore, prior to the prosecution of Plaintiffs, Defendants Karr and Chassaing engaged in policymaking and investigatory roles on behalf of the City of Ferguson and Ferguson Police Department, including through Karr's policymaking position as the City Attorney, in which she worked closely with the Mayor and other city officials in regards to Ferguson's law enforcement policies and its response to public protests.

67.    Defendant Karr's influence over the affairs of the City of Ferguson is reflected in her legal bills, which "document conference calls with the mayor, the drafting of news releases and talking points, correspondence with national news outlets, memorandums to the city clerk about records requests, and hours upon hours spent in closed meetings with the City Council."[17]

68.    In her position as City Attorney, Karr also ratified and condoned the Ferguson Police Department's unlawful and unconstitutional interpretation, implementation and enforcement of the failure to comply ordinance.

---

[17] Deere, Stephen, "Ferguson City Attorney, Target Of Protesters In Recent Months, Resigns Position." St. Louis Post-Dispatch, May 24, 2016.

69.     On information and belief, City of Ferguson officials have admitted that having Defendant Karr serve as both City Attorney and prosecutor constituted, or at least created an appearance of, a conflict of interest in regards to her representation of the City of Ferguson.

70.     On information and belief, Defendants Karr and Chassaing, through their investigatory and policymaking roles, have failed to remedy the City of Ferguson and Ferguson Police Department's custom, practice and usage of abuse of the failure to comply ordinance and other similar ordinances, and have thereby effectively ratified the Ferguson Police Department's ongoing violations of the constitutional rights of citizens.

71.     As a direct result of the conduct of Defendants described above, Plaintiffs suffered damages including the loss of their liberty, as well as fear, anxiety and emotional distress.

72.     The acts of Defendants as described herein were intentional, wanton, malicious, evil and oppressive, and exhibited a reckless indifference to the federally protected rights of Plaintiffs, thus entitling plaintiffs to an award of punitive damages against Defendants in order to punish and to deter them and others similarly situated from like conduct in the future.

73.     Plaintiffs also request an award of reasonable attorneys fees and legal costs pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future, for attorneys' fees and costs, and for such other and further relief as the Court deems just and proper, the premises considered.

## COUNT III

### PLAINTIFFS' CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

74.    Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

75.    Defendants conspired and acted together in arresting, charging and prosecuting Plaintiffs without probable cause and in retaliation for Plaintiffs' exercise of their protected constitutional rights to free speech and lawful assembly.

76.    Each of the Defendants engaged in multiple overt acts in furtherance of their conspiracy, including pursuing criminal charges against Plaintiffs without probable cause in bad faith and for improper collateral purposes; and by manufacturing evidence in order to create an illusion of probable cause in support of the baseless "failure to comply" charges brought against Plaintiffs.

77.    The acts of Defendants in furtherance of their conspiracy were intentional, wanton, malicious, evil and oppressive, and/or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants in order to punish and to deter them and others similarly situated from like conduct in the future.

78.    Plaintiffs also request an award of reasonable attorneys fees and legal costs pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them

and others similarly situated from like conduct in the future, for attorneys' fees and costs, and for such other and further relief as the Court deems just and proper, the premises considered.

### COUNT IV

### MUNICIPAL LIABILITY AGAINST DEFENDANT CITY OF FERGUSON FOR FOURTH, FIFTH AND FOURTEENTH AMENDMENT VIOLATIONS PURSUANT TO 42 U.S.C. §1983

79.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

80.     Defendant City of Ferguson maintained, condoned and was deliberately indifferent to unconstitutional policies, customs, practices and usages of the Ferguson Police Department, including but not limited to:

(a)     Falsely arresting subjects for violation of the unconstitutional failure to comply ordinance;

(b)     Stopping subjects without reasonable suspicion and making arrests without probable cause in violation of the Fourth Amendment;

(c)     Enforcing the failure to comply ordinance and similar city ordinances in a manner which infringes on free expression and as an improper means for retaliating against protected expression, in violation of the First Amendment;

(d)     Enforcing the failure to comply ordinance and similar city ordinances in a racially discriminatory manner;

(e)     Creating a false record in police reports and other documentation to provide non-existent legal justification for arrests and to support subsequent prosecution based on those false charges, even in the absence of probable cause, in violation of the Fourteenth Amendment; and

(f)     Pursuing baseless criminal prosecutions for violation of the failure to comply ordinance and similar city ordinances, without probable cause, with malice and for improper retaliatory purposes.

81.     Defendant Ferguson was aware that its agents, including the individual defendants herein, took unwarranted law enforcement action against individuals, like Plaintiffs, who were engaged in activity protected by the First Amendment to the United States Constitution; and that its agents enforce the failure to comply ordinance in a manner which violates the constitutional rights of citizens.  Defendant Ferguson has been deliberately indifferent in its duty to correct, supervise, control and discipline its agents, officers and employees.

82.     The Ferguson Police Department's customs, practices and usages are so pervasive that they constitute the de facto policies of the City of Ferguson.

83.     Further, by its actions, Defendant City of Ferguson has ratified the unlawful conduct of the individual Defendants herein.

84.     These policies, customs, practices and usages directly caused and were the moving force behind the constitutional deprivations and resulting injuries to Plaintiffs.

85.     As a direct and proximate result of the conduct of the City of Ferguson, Plaintiffs suffered injuries and damages, including the loss of their liberty, fear, apprehension, anxiety and emotional distress; suppression of Plaintiffs' First Amendment Rights; violation of Plaintiffs' Fourth Amendment right against unreasonable seizures of their person; and violation of Plaintiffs Fourth, Fifth and Fourteenth Amendment rights against being criminally prosecuted in the absence of probable cause and in bad faith.

86.     Plaintiffs also request an award of reasonable attorneys fees and legal costs pursuant to 42 U.S.C. Sec. 1988.

WHEREFORE, Plaintiffs pray judgment against Defendant City of Ferguson for $20 million in compensatory damages, for attorneys' fees and costs, and for such other and further relief as the Court deems just and proper, the premises considered.

## COUNT V

### PLAINTIFFS' CAUSE OF ACTION FOR MALICIOUS PROSECUTION UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

87.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

88.     Defendants Harris, Gibbons and the John Doe Defendants instigated the criminal proceedings against Plaintiffs by providing false and misleading information in the police reports prepared and signed by Defendants Harris and Gibbons and in the Complaints/Informations. Defendants were the "moving force" behind Plaintiffs' subsequent criminal prosecution, which never would have occurred but for their illegal actions. Defendants Karr and Chassaing also instigated and continued the criminal proceedings against Plaintiffs through their investigation of the underlying facts and in their private work as "prosecutors" on behalf of the City of Ferguson, as described above.

89.     Defendants lacked probable cause in both law and fact to instigate and pursue the criminal proceedings against Plaintiffs, in that Defendants lacked such facts and circumstances as to warrant a prudent person having the honest belief that the actions and the means taken in the investigation and prosecution of Plaintiffs were just, legal, and proper.

90.     Defendants Harris and Gibbons were "complaining witnesses" in that substantially all of the evidence used to charge Plaintiffs was derived from and provided by Harris and Gibbons, even though Defendants had no knowledge of the facts which they swore were true in the Informations.

91.     The facts known to Defendants (including pertinent facts that could have been ascertained by Defendants through the exercise of due diligence prior to instituting the judicial proceedings against Plaintiffs) did not support any allegation that Plaintiffs had violated the "failure to comply" ordinance.

92.     In instigating, commencing and continuing the judicial proceedings against Plaintiffs described above, Defendants acted maliciously.  Defendants intentionally engaged in wrongful acts and conduct without just cause or excuse in relentlessly pursuing Plaintiffs' wrongful prosecution, without any probable cause to do so and for the improper purpose of chilling protected speech, as well as, in Karr and Chassaing's cases, for personal profit.

93.     The underlying litigation terminated in Plaintiffs' favor when the St. Louis County Circuit Court acquitted Plaintiffs of all charges.

94.     At all relevant times, Defendants Harris, Gibbons and the John Doe Defendants were acting within the course and scope of their employment and agency relationship with the City of Ferguson, and acted as the employees, servants and agents of when they maliciously prosecuted Plaintiff.

95.     Exceptional circumstances exist to impose liability on Defendants Karr and Chassaing pursuant to Missouri law in that Defendants' conduct in pursuing baseless criminal prosecutions constituted malicious and tortious acts.  Defendants Karr and Chassaing pursued and continued the prosecutions of plaintiffs when they knew there was no probable cause for the prosecutions of the actions, and, as described above, Defendants' primary purpose for initiating and continuing the proceedings was something other than securing a proper adjudication of the claim.  Furthermore, Defendants Karr and Chassaing knew that Ferguson and the officer Defendants were motivated by malice in arresting and bringing "failure to comply" charges

against Plaintiffs, in that the arrests were intended to retaliate for and infringe upon protected speech. Defendants Karr and Chassaing shared these motivations in pursuing the prosecutions of Plaintiffs.

96.     On information and belief, Defendant City of Ferguson has waived sovereign immunity as to itself and its employees, servants and agents by obtaining insurance coverage, pursuant to § 537.610, Mo. Rev. Stat.

97.     As a direct and proximate result of Defendants' malicious prosecution of Plaintiffs, Plaintiffs were damaged.

98.     Defendants' malicious prosecution, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount sufficient to punish and deter Plaintiffs and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future, and for such other and further relief as the Court deems just and proper, the premises considered.

## COUNT VI

### PLAINTIFF'S CAUSE OF ACTION FOR ABUSE OF PROCESS UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

99.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

100.     On information and belief, Defendants' sole purpose in arresting the Plaintiffs and instigating and continuing the criminal prosecutions against them, where there was no evidence whatsoever supporting any criminal conduct by the accused, was in order to deter others from

27

expressing their constitutionally-protected rights of free speech and assembly, an improper and collateral purpose.  As set forth above, Defendant Chassaing has stated to the press that the cases against Plaintiffs were pursued "in order to deter others participating in future protests[.]"

101.   Defendants' actions in falsely implicating Plaintiffs in criminal activity as set forth above constituted an improper use of process that was neither warranted nor authorized by the process.

102.   Defendants abused legal process for an unlawful purpose and with an illegitimate and collateral objective, and have acted willfully and with an ulterior motive in their use of legal process, in that Defendants used legal process through their authority for purposes other than legitimately investigating and prosecuting criminal acts.

103.   At all relevant times, the individual Defendants were acting within the course and scope of their employment and/or agency relationship with the City of Ferguson, and acted as the employees, servants and agents of the City and its representatives.

104.   As a result of Defendants' abuse of process against Plaintiffs, Plaintiffs were damaged, Plaintiffs suffered injuries and damages, including the loss of their liberty, fear, apprehension, anxiety and emotional distress; suppression of Plaintiffs' First Amendment Rights; violation of Plaintiffs' Fourth Amendment right against unreasonable seizures of their person; and violation of Plaintiffs Fourth, Fifth and Fourteenth Amendment rights against being criminally prosecuted in the absence of probable cause and in bad faith.

105.   Defendants' abuse of process, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future, and for such other and further relief as the Court deems just and proper, the premises considered.

### COUT VII

### PLAINTIFF'S CAUSE OF ACTION FOR FALSE ARREST/IMPRISONMENT UNDER MISSOURI LAW AGAINST DEFENDANTS CITY OF FERGUSON, HARRIS, GIBBONS AND THE JOHN DOE DEFENDANTS

106.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs, the same as if fully herein set forth.

107.     As set forth above, Plaintiffs were restrained against their will when Defendants Harris, Gibbons, and the John Doe Defendants wrongfully arrested and jailed Plaintiffs.

108.     This restraint was unlawful in that Plaintiffs were arrested without probable cause or any other legal excuse, and in retaliation for Plaintiffs' exercise of constitutionally-protected rights to free speech and assembly.

109.     Defendants intended to cause this false arrest and wrongful imprisonment and confinement of Plaintiffs.

110.     At all relevant times, the officer Defendants were acting within the course and scope of their employment and agency relationship with the City of Ferguson, and acted as the employees, servants and agents of said Department and its representatives when they falsely arrested and wrongfully imprisoned Plaintiffs.

111.     As a result of Defendants' false arrest and wrongful imprisonment, Plaintiffs were injured.

112.    Defendants' actions were carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregardfor the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiffs pray judgment against Defendants for $20 million in compensatory damages, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future, and for such other and further relief as the Court deems just and proper, the premises considered.

Respectfully submitted,

DOWD & DOWD, P.C.


By:    /s/  Douglas P. Dowd
          DOUGLAS P. DOWD #29240MO
          ALEX R. LUMAGHI #56569MO
          211 North Broadway, Suite 4050
          St. Louis, Missouri   63102
          Tel. (314) 621-2500
          Fax No. (314) 621-2503
          doug@dowdlaw.net
          alex@dowdlaw.net

          and

          ARCHCITY DEFENDERS, INC.


By:    /s/Michael-John Voss
          Michael-John Voss #61742MO
          Thomas B. Harvey #61734MO
          Blake A. Strode #68422MO
          Edward J. Hall #0012692IA
          Nathaniel R. Carroll #67988MO
          1210 Locust Street, 2ND Floor
          Saint Louis, MO 63103
          Tel: (855) 724-2489
          Fax: 314-925-1307
          mjvoss@archcitydefenders.org

tharvey@archcitydefenders.org
bstrode@archcitydefenders.org
ehall@archcitydefenders.org
ncarroll@archcitydefenders.org